Ex-Cell-O Corporation, Appellant, *v.* Kosydar, Tax Commr., Appellee. █

(No. 1-75-55—Decided February 12, 1976.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Kenneth D. Beck,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Clinton J. Miller, III,* for appellee.

Guernsey, J. For the purposes of this appeal from a decision of the Board of Tax Appeals by Ex-Cell-O Cor-

poration, a Michigan corporation, hereinafter referred to as the taxpayer, we are concerned with a limited area of its corporate property and business. As a part of its business it manufactures in Bluffton (Allen County), Ohio, certain machines, known as "Pure-Pak" machines, the ownership of which in all instances here pertinent it retains, but which on completion of the manufacturing process are leased by it, primarily to food manufacturers or processors. The machines are so designed that from a flat plastic coated paper blank, obtained by the lessee from another manufacturer, they will form, fill and seal a carton containing a measured or weighed amount of the lessee's product. 95 per cent or more of the leased machines are leased by dairy businesses for the forming and filling with their dairy type products of the "gable" top containers in which such products are usually sold at retail stores. The balance of the machines are leased for similar use for "Coca Cola" syrup, malted milk balls and other products. Although some components are common to all machines, each machine must be designed for and adapted to the processing line of the lessee from the standpoint of the product involved, the size of the carton to be formed, the speed with which the forming, filling and sealing takes place, as well as other special or individual considerations. Prior to 1961 the cartons formed by these machines were wax coated but in the early 1960's progress in the industry dictated the use of plastic coated cartons and from 1961 to 1964 conversion kits were manufactured and applied to many of the machines then in use at the place of business of the lessees to adapt these machines to the formation of plastic cartons. Similarly, some of the older type and thus obsolescent "wax" machines were entirely replaced by new "plastic" machines.

Although other personal property of the taxpayer was involved in the administrative proceedings of the tax commissioner the personal property tax liability of the taxpayer with respect to only three categories of property is at issue in this appeal.

Category I. This consists of parts for machines in the

process of being assembled to the specifications of prospective lessees, partially assembled machines and completed machines awaiting final lease documentation, shipment to prospective lessees, and installation in their plants. All of these are located at the taxpayer's factory at Bluffton. The taxpayer has not returned this personal property as being subject to personal property tax claiming that such property is exempt until installed and in operation or capable of operation in the business for which acquired. R. C. 5701.08. The tax commissioner's position and the board's decision appealed from is that such machines constitute inventory of a manufacturer which must be returned as taxable under the provisions of R. C. 5711.16 and that the plain meaning of R. C. 5701.08(A) makes clear that they are "used in business."

Category II. This category consists of machines owned by the taxpayer, under lease to Ohio lessees (principally dairies), and physically located in their plants in Ohio. The taxpayer does not contest the taxability of this equipment but does contest its valuation. It had reported this equipment at depreciated book value or thirty per cent of cost, whichever was the greater value. The testimony is conflicting as to the method of depreciation, an employee of the taxpayer testifying that straight line annual depreciation of ten per cent was applied until the individual machine was depreciated to thirty per cent of cost and an agent of the tax commissioner testifying that a composite rate of depreciation greater than ten per cent was used resulting in depreciation to thirty per cent in less than five years. There was also undisputed evidence that the conversion kits placed on machines in the early 1960's were capitalized and then depreciated at the same rate. It would also appear that no reduction in the value of any "wax" machine was taken by reason of the obsolescence requiring conversion to "plastic", and that no depreciation adjustment was made as to the conversion kits because of differences in the remaining useful life of the respective machines to which such kits were applied. The evidence as we will further discuss hereafter also indicates that many machines so converted have been

on lease for more than 10 years on November 30, 1971, the end of the audit period.

The tax commissioner's view as to the valuation, which was sustained by the board, was that the Composite Prime Facie Annual Allowances established by him for determining the true value of equipment should be applied and that his assessment thus affirmed was based on the annual prima facie allowance of five per cent applicable to "Paperboard Containers" equipment in the "Paper and Allied Products" industry. The taxpayer, on the other hand, asserts that if such prima facie allowances are applicable the taxpayer is entitled, instead, to the annual allowance of seven and one half per cent applicable to equipment used for "Dairy Products" in the "Food Processing" industry. The "Composite Prima Facie Annual Allowances" established by the commissioner are also subject to the following provisions:

"For the year of acquisition, the allowance shall be one-half the applicable annual percentage.

"Thereafter, the annual allowance shall be applied cumulatively until the remaining true value reaches or passes 30% of cost, at which point 30% of cost shall be the minimum acceptable for that year's acquisitions.

"From that point, the annual allowance shall be 2½% until the true value reaches 20% of cost.

"20% of cost shall be the minimum true value acceptable so long as the equipment is held for use in business."

The record also indicates that only machines to the taxpayer's value of $13,450 and the commissioner's valuation of $21,020 were leased and located in Allen County, Ohio, the balance of such leased machines being located in other Ohio counties.

Category III. This category of equipment consists of machines and parts thereof, formerly leased, which have been returned to the possession of the taxpayer for one reason or another. None of these machines are in operable condition, most were returned with parts or components missing, and almost all in unclean condition contaminated with the residue of the dairy or other product for which

they were used. Some of these returns were located in the factory building of the taxpayer at Bluffton, Ohio, and the balance in farm barns on nearby farms. Occasionally parts or components of these machines, including the basic frame, have been incorporated in machines leased in essentially new condition to lessees. A small and indefinite number of these machines are "rebuilt" for the same purpose. The bulk of this stored equipment, however, is unuseable being sold from time to time for its scrap value. The taxpayer had not returned any of this category for personal property tax although it was carried on its books at the sum of $1,-209,403 which represented its original cost price, less straight line depreciation, devalued further at the direction of the taxpayer's accountants, it being the taxpayer's view that these used and inoperable machines were not kept and maintained as a part of a plant capable of operation, and thus were not used in business. The commissioner, however, valued and assessed these machines, and the board approved same, at thirty per cent of their cost price. The taxpayer asserts that even assuming the liability for tax on this equipment the commissioner's valuation was abitrary exceeding true value.

In an appeal properly before us our duty is then to consider the certified transcript of the record of the proceedings of the board pertaining to the decision complained of and the evidence considered by the board in making such decision and determine whether the decision is reasonable and lawful or unreasonable and unlawful. R. C. 5717.04. In its notice of appeal to this court the taxpayer asserts that its principal place of business is in Allen County, Ohio, and this is not contested by the commissioner so the record supplies our jurisdiction to determine the issues as to all of the equipment involved although most of the equipment in the second category is located in twenty eight other Ohio counties.

Basic to our determination of the problems here involved is the character of the business to which the personal property tax is made applicable. In this connection R. C. 5701.08 prescribes as pertinent:

"As used in Title LVII of the Revised Code:

"(A) Personal property is 'used' within the meaning of 'used in business' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as material, parts, products, or merchandise. Machinery and equipment classifiable upon completion as personal property while under construction or installation to become part of a new or existing plant or other facility is not considered to be 'used' by the owner of such plant or other facility within the meaning of 'used in business' until such machinery and equipment is installed and in operation or capable of operation in the business for which acquired. * * *

"(B) 'Business' includes all enterprises, except agriculture, conducted for gain, profit, or income and extends to personal service occupations."

R. C. 5711.16 then prescribes:

"A person who purchases, receives, or holds personal property for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit *by so doing* is a manufacturer. When such person is required to return a statement of the amount of his personal property used in business, he shall include the average value, estimated as provided in this section, of all articles purchased, received, or otherwise held for the purpose of being used, in whole, or in part, in manufacturing, combining, rectifying, or refining, and of all articles which were at any time by him manufactured or changed in any way, either by combining, rectifying, refining, or adding thereto, which he has had on hand during the year ending on the day such property is listed for taxation annually. * * *

" * * * A manufacturer shall also list all engines and machinery, and tools and implements, of every kind *used, or designed to be used, in* refining and *manufacturing, and owned or used by such manufacturer.*" (Emphasis added.)

R. C. 5711.17 provides:

"All personal property used in business and belonging to a manufacturer, *except that required to be listed on the average basis* by section 5711.16 of the Revised Code, and that specifically mentioned in such section, shall be listed separately from the property of such manufacturer mentioned in said section." (Emphasis added.)

As then pertinent, R. C. 5711.18 prescribes:

" * * * In the case of personal property used in business, the book value thereof less book depreciation at such times shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money. Claim for any deduction from * * * depreciated book value of personal property must be made in writing by the taxpayer at the time of making his return * * * ."

What then was the character of the taxpayer's business? In effect, it had two characters. In the construction of the machines or equipment here involved and in the generic sense implicit in R. C. 5701.08(A) and as expressed in the second paragraph of R. C. 5711.16 and in R. C. 5711.-17 the taxpayer was a manufacturer. It does not appear from the record, however, that in the manufacturing of these machines the taxpayer could or did make a gain or profit *by so doing,* for the taxpayer's gain or profit was deferred to the occasion and time when he received rental payments from the lessees of such machinery. The taxpayer did not, therefore, fit within the statutory definition of a manufacturer subject to tax on his inventories raw materials, parts or completed machines as prescribed by the first paragraph of R. C. 5711.16.

It is also implicit that the "engines and machinery, and tools and implements," referred to in the second paragraph of R. C. 5711.16 and the personal property "kept and maintained as a part of a plant capable of operation" referred to in R. C. 5701.08, are pertinent to the taxpayer's plant(s) and not to plants of lessees. Thus, as to the machines here involved we have a situation essentially analogous to that appearing in the case of *Equilease Corp.* v. *Donahue* (1967), 10 Ohio St. 2d 81, where the

Supreme Court held with respect to an office equipment lessor:

"Appellant as a part of its business operation is engaged in the leasing of equipment to others. Although the equipment may be used by the lessees in their businesses, it is clear that in collecting rentals for its use appellant also *is using the equipment for purposes of profit in its own business.* Thus one engaged in the business of leasing tangible personal property to others is engaged in an enterprise conducted for gain, profit or income within the meaning of Section 5701.08(B), Revised Code, and the property so leased is used in the business by the lessor and is taxable to him. See *Southland Stores No. 3, Inc.,* v. *Bowers, Tax Commr.,* 171 Ohio St. 271." (Emphasis added.)

In the cited *Southland Stores* case the issue was when store fixtures became taxable to the lessor of same and the Supreme Court held:

"The question presented is whether the appellant became a taxpayer *engaged in business* on April 13, 1956, when it became obligated under the lease to deliver store equipment to the lessee at a future date, or on December 31, 1956, when it had acquired and was holding a working inventory of equipment for leasing, or on February 4, 1957, when possession of the equipment was transferred to the lessee and rental payments began, in accordance with the agreement.

"From an examination of the record in this case, this court is of the opinion that the decision of the Board of Tax Appeals, holding that appellant became a taxpayer engaged in business on February 4, 1957, is not unreasonable or unlawful. The decision is, therefore, affirmed." (Emphasis added.)

It is clear from these cases that where the gain, profit or income is to be derived from the leasing of equipment, rather than from some other venture, the taxpayer is not engaged in business and the personal property so leased is not taxable to the taxpayer as being "used in business" until possession of the property is transferred to the lessee and rental thereon, as a consideration for such trans-

fer and use, begins to accrue. That being the case it necessarily follows, as it did in the *Southland Stores* case, that the lessor is not liable for personal property tax on such equipment while in the process of acquiring and, holding a working inventory of equipment thus to be leased unless some theory of liability arises merely because the lessor, instead of purchasing the equipment from some other supplier, chooses to manufacture same designed specifically to the requirements of the taxpayer's prospective lessees. As we have observed, such equipment not being used in the taxpayer's own plant and not being purchased, received, or held "for the purpose of adding to its value by manufacturing, refining, rectifying, or combining different materials with a view of making a gain or profit by so doing" no personal property tax liability accrues to the taxpayer by virtue of the fact that it is the manufacturer of same in the generic sense.

It is thus our determination that the parts and partially and fully assembled machines included in Category I are not subject to personal property tax and that the decision of the Board of Tax Appeals so finding same taxable is both unreasonable and unlawful.

We proceed, out of order, to a further consideration of Category III parts and equipment which, insofar as tax liability is concerned, was treated by the commissioner and the Board of Tax Appeals in essentially the same fashion as Category I, i.e., as being a stock or inventory held by the taxpayer to be incorporated into machines then leased. The taxpayer's evidence, as we have seen, was to the effect that only a small part was so used and that most of such property was held for salvage. The commissioner claimed to the contrary but his evidence lacked a great deal of probative value because his agent who conducted the field audit and who was the commissioner's only witness had determined this property (as well as Category I property) to be manufacturing inventory after having examined some of it "in the plant" but none of it "in the barns." Notwithstanding this apparent conflict as to future use, even assuming that such used prop-

erty was being held by the taxpayer for incorporation in new or rebuilt machines constructed to the specification of lessees, for the reasons heretofore expressed such property would not be taxable except as part of the completed machine and until such machine was delivered to the possession of the lessee with rental payments accruing thereon.

For these reasons it is our determination that the used parts and machines included in Category III are not subject to personal property tax and that the decision of the Board of Tax Appeals finding same taxable is both unreasonable and unlawful.

We come then to the issue of the valuation of Category II property, the equipment on lease in the possession of lessees.

The taxpayer returned this equipment at its book value, i. e:, the taxpayer's cost less book depreciation. Under R. C. 5711.18 this value "shall be taken as the true value of such property unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money." Also, under the same statute claim by the taxpayer for any deduction from that value must be made in writing at the time of making his return. It does not appear that such a claim was made so the lower limit of valuation for the property returned which may be claimed by the taxpayer for the period of the return is established by the book value so returned.

Notwithstanding that this statute, in effect, establishes the depreciated book value as the prima facie true value the commissioner, by long standing rule, adopted the schedule of "Composite Prima Facie Annual Allowances" or depreciation rates hereinbefore referred to on which he based his claim, which was upheld by the Board of Tax Appeals, that the taxpayer's book depreciation was at an excessive rate. The Supreme Court of Ohio has on numerous occasions upheld the authority of the commissioner to establish these prima facie rates and their use in determining true value, including the establishment of maximum depreciation percentages for equipment still in use, and these methods of depreciation have been known over

the years in the Department of Taxation as "302 Computation." *Wheeling Steel Corp.* v. *Evatt, Tax Commr.* (1944), 143 Ohio St. 71; *Harper* v. *Peck* (1954), 161 Ohio St. 300; *Adams* v. *Bowers, Tax Commr.* (1958), 167 Ohio St. 389; *Gahanna Heights , Inc.,* v. *Porterfield* (1968), 15 Ohio St. 2d 189; and *Syro Steel Co. v. Kosydar* (1973), 34 Ohio St. 2d 9. Although, the tax commissioner and the Board of Tax Appeals must consider evidence which in specific cases or under special circumstances justify application of other rates of depreciation in arriving at true value the "burden is on the taxpayer to show that the rate of depreciation arrived at under the '302 Computation Directive' does not reflect the true value of its personal property." *Gahanna Heights, Inc.,* v. *Porterfield, supra.* See also, *Adams* v. *Bowers, supra,* and *Syro Steel Co.* v. *Kosydar, supra.* Here, the taxpayer offered no evidence, independently of its book value of the true value of the leased equipment. As appears in the last cited case such evidence "falls far short of meeting this burden."

The taxpayer's primary claim as to valuation is not based on evidence of actual true value other than as found by the tax commissioner but on its claim that in using the "Composite Prima Facie Annual Allowances" the commissioner did not even properly apply his own formula, selecting the 5 per cent or twenty year rate of depreciation applicable to paperboard container equipment used in the "paper and allied products" industry rather than the 7½ per cent or thirteen and a third year rate applicable to dairy products equipment used in the "food processing" industry. Again the taxpayer offered no evidence that, as a matter of course, its equipment was not useable after a period of only thirteen and a third years and the taxpayer's evidence, as well as the commissioner's evidence, was that of the 176 machines reported on lease as of November 30, 1971, 30 had been leased prior to 1958 (at least 14 years prior to tax listing date) and nine had been in use for at least 20 years, although conversion kits had been applied to all of these machines between 1961 and 1964 to adapt them to use for plastic cartons and thus to overcome

142

any functional obsolescence There was thus sufficient evidence of probative value to support the application of a twenty year depreciation rate and none to show that a different prima facie rate of depreciation should be applied.

The decision of the Board of Tax Appeals respecting the valuation of equipment under lease was, therefore, reasonable and lawful.

Arriving at these respective findings it is our judgment that the decision of the Board of Tax Appeals as to the equipment under lease must be affirmed and its decision as to all other personal property must be vacated and final judgment entered for the taxpayer.

*Judgment accordingly.*

COLE, P. J., and MILLER, J., concur.